# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>vs.<br><br>TYRONE HAMPTON,<br><br>                       Defendant. | 3:22-CR-000084-02-JMK-MMS<br><br>**FINAL REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS [DKT. 80, 107, 110, 122]** |

## I.    SUMMARY OF RECOMMENDATION FOR *PRO SE* DEFENDANT

You have asked this Court to suppress evidence from the search warrants at issue. You were allowed to file one amended motion since you are filing motions without an attorney. You filed several motions that are the essentially the same, so the four pending motions will be considered together. This Court is recommending that your motions be denied because you did not have a connection or property right to apartment #4 or the packages. You need to show that *first* that you have a legitimate expectation of privacy in the area searched to challenge the government's search warrants. This Court understands that you are making a good-faith effort, so your *Franks* arguments were still considered. This Court commends your well-thought-out arguments that were presented in a clear fashion. A *Franks* challenge has a high standard though, and your arguments did not meet the standard. The United Parcel Service ("UPS") policy did exist, and this Court is satisfied that it did exist because the government introduced an exhibit which establishes that there

was such a policy. You are right that the date was incorrect and that one of the law enforcement officials was incorrectly identified. These two incorrect statements were not done on purpose or in a very careless way. Honest mistakes are inevitable. This Court looked at the entire situation, viewed the mistakes as minor, and would not have affected the overall probable cause analysis.

You have two weeks to object to this Report and Recommendation. You have five (5) pages to explain what you think is specifically wrong about this Report and Recommendation. It can be an objection to the facts or the legal analysis. You can ask the District Court for more time to file the objection (Local Rule 47.1 "Pretrial Motions to Continue Deadlines or Proceedings."). If you object, the government can respond. The District Court then considers your objections (if you file them) and will agree or disagree with you, and then rule on your motion. This information is included in the last page, so please make sure to carefully read it.

This Court, in good-faith, did not reject your many motions that abused the docketing system. The District Court may receive more evidence, but it can also reject any further filings that relate to the pending motions. This is for your information.

This is just a *summary*. The actual Report and Recommendation is below.

## II. MOTION PRESENTED

The operative indictment, filed in January 2023, charges Tyrone Hampton with one count of conspiring to distribute and possess controlled substances,[1] two counts of

---

[1] 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)-(B)

attempting to possess and distribute controlled substances,[2] and one count of conspiring in a money laundering scheme.[3] Hampton moves, pro se, to suppress the evidence from the search warrant on two bases: (1) the affidavit intentionally or recklessly omitted several pieces of material information and that, had that information been included, the affidavit would not have supported probable cause; and (2) the affidavit intentionally or recklessly made a material misstatement. *See generally* Dkt. 80, Dkt. 107, Dkt. 110. The government responds that (1) Hampton lacked a reasonable expectation of privacy in the targeted apartment or in the second package; and (2) Hampton's motion nonetheless fails on the merits because there were no material misstatements or omissions in the affidavit. *See generally* Dkt. 114.

Mindful of Hampton's pro se status—this Court allowed Hampton to file an amended motion. Dkt. 80; Dkt. 101; Dkt. 107; Dkt. 110; Dkt. 122.

This Court hereby issues its Final Report and Recommendation regarding Hampton's Motions to Suppress. For the reasons below, Hampton's request for a *Franks* hearing is **DENIED** because he failed to make a substantial preliminary showing of material omissions or misstatements in the search warrant that were intentional or reckless in nature. Hampton's Motions to Suppress should therefore be **DENIED**. 28 U.S.C. § 636(b)(1)(B).

//

//

---

[2] 21 U.S.C. § 841(a)(1), (b)(1)(A)-(B)
[3] 18 U.S.C. § 841(B)

### III.　FACTUAL HISTORY

The following facts are drawn from party briefs and from law enforcement reports. Dkt. 80; Dkt. 107; Dkt. 110; Dkt. 114.

On April 26, 2022, a United Parcel Service worker failed to deliver a package to a multi-resident building. Dkt. 114-2 at 7; Dkt. 114-3 at 6. The delivery failed because the package did not specify an apartment number and the driver "was unable to find anyone who recognized the name of the recipient and noted all the seams of the package were taped. *Id.*; *Id.* The package returned to the UPS office, was deemed suspicious, and was opened "per their company policy and identified what they believed were controlled substances in the box." *Id.*; *Id.*

On April 27, law enforcement officials verified that a substantial amount of controlled substances were in the package. *Id.*; *Id.* Tiffany Thompson, now known to be the intended receiver, inquired into the delivery status of the package. *Id.*; *Id.* Thompson, had in the weeks before, been the subject of a landlord complaint, "regarding people trespassing in the parking lot and [] wanting to evict the tenant of apartment 4, Jasmine Larionoff." *Id.* The landlord believed that controlled substances were being trafficked from apartment #4 because of the numerous non-residents that visited that apartment. *Id.* Law enforcement then contacted the landlord, received verification of the landlord's observations, and pointed out his interactions with a suspicious vehicle. *Id.* The driver, now known to be Tyrone Hampton, offered to purchase the building and "that he would pay for Jasmine's rent" to avoid being evicted. *Id.* After speaking with the landlord, law enforcement observed Hampton "sitting on the door step of Apt. 4." [*sic*]. A separate law

enforcement report, notably, mentioned that "Tyrone Hampton of California, [] had recently been residing at" apartment #4 of the building. Dkt. 114-6 at 1. Law enforcement then executed the search warrant and arrested Hampton. Dkt. 114-2 at 7; Dkt. 114 at 3-4.

A second package, addressed to the same residential building, was flagged on April 28. Dkt. 114-3 at 5. Law enforcement investigated and concluded that there was no match between the recipient's name and records of the building tenants. *Id.* More controlled substances were found inside the package. *Id.*

### IV. LEGAL ANALYSIS

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. A criminal defendant must, however, show that "his own Fourth Amendment rights [were] infringed." *Byrd v. United States*, 138 S.Ct. 1518, 1526 (2018) (citation cleaned up). As relevant here, "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186 (9th Cir. 2015); *United States v. Taketa*, 923 F.2d 665, 670-71 (9th Cir. 1991).

Here, nothing in the record indicates that Hampton had a reasonable expectation of privacy in apartment #4. Hampton, does not address, let alone provide evidence that he slept overnight in apartment #4, that he had an apartment key, or that he stored possessions there. Any of these factors, alone or together, could have arguably created a right to exclude people from the home. To the contrary—the record indicates that the landlord twice confirmed that the only tenant was Jasmine Larionoff, and that Hampton was aware of

5

Case 3:22-cr-00084-SLG-MMS   Document 126   Filed 03/21/23   Page 5 of 9

enforcement report, notably, mentioned that "Tyrone Hampton of California, [] had recently been residing at" apartment #4 of the building. Dkt. 114-6 at 1. Law enforcement then executed the search warrant and arrested Hampton. Dkt. 114-2 at 7; Dkt. 114 at 3-4.

A second package, addressed to the same residential building, was flagged on April 28. Dkt. 114-3 at 5. Law enforcement investigated and concluded that there was no match between the recipient's name and records of the building tenants. *Id.* More controlled substances were found inside the package. *Id.*

### IV. LEGAL ANALYSIS

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. A criminal defendant must, however, show that "his own Fourth Amendment rights [were] infringed." *Byrd v. United States*, 138 S.Ct. 1518, 1526 (2018) (citation cleaned up). As relevant here, "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186 (9th Cir. 2015); *United States v. Taketa*, 923 F.2d 665, 670-71 (9th Cir. 1991).

Here, nothing in the record indicates that Hampton had a reasonable expectation of privacy in apartment #4. Hampton, does not address, let alone provide evidence that he slept overnight in apartment #4, that he had an apartment key, or that he stored possessions there. Any of these factors, alone or together, could have arguably created a right to exclude people from the home. To the contrary—the record indicates that the landlord twice confirmed that the only tenant was Jasmine Larionoff, and that Hampton was aware of

Larionoff's possessory rights when he offered to pay for *her* past due rent. Even if Hampton's presence on the doorsteps of apartment #4 can be construed as a visitor license, expectation of privacy does not necessarily turn on mere presence; it is a showing of trust from the tenant to the guest that symbolizes a reasonable expectation of privacy. *See Carter*, 525 U.S. at 90. Indeed, Hampton's motions emphasize the drug use history of prior tenants to possibly indicate that he was not the intended recipient or that he did not have an expectation of privacy in apartment #4. Regarding the second package, this Court notes that it was intended for apartment #2, that Hampton's name was omitted as the recipient, and Hampton has not explicitly claimed an expectation of privacy.

On these facts, Hampton cannot challenge the searches and seizures from the two packages; and even if this Court were to review the merits of the motion, Hampton's arguments would fare no better.

The Warrant Clause of the Fourth Amendment "provides that a Warrant may be issued only upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "A search warrant is supported by probable cause if the issuing judge finds that, given all the circumstances set forth in the affidavit before him" indicate that a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States. v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (internal quotations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The duty of a reviewing Court "is to simply ensure that the" issuing Judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 214. The issuing Judge's finding of

6

Case 3:22-cr-00084-SLG-MMS    Document 126    Filed 03/21/23    Page 6 of 9

probable cause is accorded substantial deference, and the affidavit enjoys a "presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Despite this presumption, there are some circumstances where a defendant may challenge the truthfulness of factual statements in the affidavit, and therefore undermine the warrant's validity, and along with it, the search and seizure. *Id.* at 156. The relevant circumstance here is when the affiant intentionally or recklessly made misleading statements or omissions. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). The determinative inquiry is whether probable cause remains after casting aside erroneous information and correcting material omissions. *Perkins*, 850 F.3d at 1119 (quoting *United States v. Ruiz*, F.3d 1144, 1149 (9th Cir. 2014)) (internal quotations omitted).

To begin, this Court dispenses with Hampton's omission or misstatement regarding UPS policy. The affidavit did not omit that UPS had such a policy because, as Hampton points out, it was included in the probable cause section. Neither was it a misleading statement to mention the UPS company policy. The government has provided evidence that the policy exists, and that the policy is clear and unambiguous: "UPS reserves the right to open and inspect any package tendered to it for transportation." Dkt. 114-1 at 1. Both packages were tendered, or in other words, paid by an individual for the transportation services of UPS. This Court hastens to add that Hampton is correct that the affidavits may have mistaken the date of the first package inspection and the name of one of the investigating officers. The government, however, has the prevailing view. On this record, the two mistakes resulted from nothing more than negligence or innocent mistake. The thrust of law enforcement records is substantially similar to the truth, save for the incorrect

7

Case 3:22-cr-00084-SLG-MMS    Document 126    Filed 03/21/23    Page 7 of 9

date and correct officer. Indeed, the affidavit and law enforcement reports both describe the UPS delivery attempts, the suspicious packages, UPS package inspections, law enforcement investigations into the packages and residents (or not) of the targeted building. Even if this Court were to accept Hampton's claims the statements were misleading or recklessly omitted, the statements would not be material to the determination of probable cause, given the resounding evidence accumulated and described in the affidavits.

All told, Hampton does not have a reasonable expectation of privacy in apartment #4 or the packages, and even on the merits, the affidavits did not mislead or omit material statements pertinent to the probable cause determination.

## V. CONCLUSION

For the reasons set forth above, Hampton's Motions to Suppress should be **DENIED**. 28 U.S.C. § 636(b)(1)(B).

DATED this 21st day of March, 2023, at Anchorage, Alaska.

*s/ Matthew M. Scoble*
CHIEF U.S. MAGISTRATE JUDGE

Pursuant to D. Alaska Loc. Mag. R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than the CLOSE OF BUSINESS on April 4, 2023. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. Miranda v. Anchondo, et al., 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before the CLOSE OF

8
Case 3:22-cr-00084-SLG-MMS   Document 126   Filed 03/21/23   Page 8 of 9

BUSINESS on April 11, 2023. The parties shall otherwise comply with provisions of D. Alaska Loc. Mag. R. 6(a). Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).